**Ellen Alice JONES, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 570.**

United States District Court
E. D. North Carolina,
New Bern Division.

Dec. 29, 1964.

---

Joseph C. Olschner, Jacksonville, N. C., for plaintiff.

Robert H. Cowen, U. S. Atty., Alton T. Cummings, Asst. U. S. Atty., Raleigh, N. C., for defendant.

WARLICK, District Judge.

Plaintiff brings this action against the defendant, the United States of America, claiming that she was injured by the negligence of Joseph LeGault, an enlisted man in the Armed Forces, who was driving a Marine Corps Passenger Brill Bus, numbered 179812, which was in collision with her automobile which she was driving at said time.

She seeks to recover the alleged sum of One Hundred Thousand Dollars ($100,-000.00), under Title 28, U.S.Code, 1346 (b).

The action was heard by the Court then presiding by designation in the Eastern District of North Carolina, at Wilmington.

From the evidence heard the facts appear about as follows:

That on August 29, 1962, plaintiff, a 31 year old dependant wife of T. T. Jones, a Marine Corps Sergeant, was driving the family 1959 Plymouth station wagon when its left rear was struck by the above mentioned bus operated at such time by said LeGault, a member of the Marine Corps in the course of his employment.

At the time of the collision between the two vehicles plaintiff was driving in the proper right hand lane along Holcomb Boulevard, a four-lane roadway divided by a median, and on the Camp LeJeune Base, returning to her home after having taken one of her small sons to the Base Hospital for treatment. She was travelling toward the main gate of said Camp. On approaching Brewster Avenue, which intersects with Holcomb Boulevard, a military police was directing traffic from a raised platform and upon his signalling the lane of traffic in which plaintiff was driving to stop, plaintiff's car and the two vehicles preceding in the same lane of travel, came to a complete stop and had remained so for approximately one minute, when her automobile was struck on the left rear by the right front of the defendant's bus, causing plaintiff's car to be knocked forward for approximately six feet, or more, and causing an estimated damage to said station wagon in the sum of $103.53; and such injuries as are herein complained of resulted proximately from the negligence of the employee of the defendant in the operation of said bus.

Plaintiff thereafter drove the car to her home, a distance of approximately ten miles, and later began to experience pain in her neck and during that night was unable to sleep, however she incidentally carried on her normal household duties until the third day following the collision when she sought treatment and medical attention at the United States Naval Hospital on the Base.

There she was examined by Dr. Edwin T. Wyman, Jr., an orthopedic surgeon, holding the rank of a Lt. Commander in the Medical Corps of the United States Naval Reserves and stationed at that time at Camp LeJeune. He was personally known to the plaintiff as she had on any number of occasions visited his office while her son, a post polio patient, was being treated.

Following a complete checkup her ailment was diagnosed as "acute cervical strain" which in the main consisted of a mild tearing of the neck muscles but with no resulting damage to the bones or ligaments, which likely came about following the impact as Dr. Wyman testified, "as her head was probably moved forcibly forward and back, giving or spraining the muscles in the back of her neck."

Dr. Wyman further testified with respect to the condition of plaintiff that "this patient was an extremely nervous person in any case. I knew this patient before she was injured because I cared

for her son and she is known to me as being, tending to be nervous."

This injury being what is commonly spoken of as a head whiplash injury, however it seems that this commonly accepted term is regarded as a poor medical term by the medical profession, but is explanatory to the layman, of the usual injury which is sustained when one is forcibly knocked forward and back by some impact.

Plaintiff was fitted with a cervical collar and given sedatives but did not accept hospitalization as Dr. Wyman advised until some two weeks later. Thereafter and on September 15, 1962, plaintiff entered the hospital where she remained until October 1. She was kept in traction for approximately two out of every three hours for ten days all to relieve muscle spasms, as is customarily done in cases of this character.

Upon her release from the hospital she was again fitted with a cervical collar to prevent re-spraining and furnished with a list of sedatives which she was to continue to take at her home.

On October 5, 1962 and following her release, plaintiff went to Wilmington, North Carolina, accompanied by her attorney, where she was seen by Dr. Bruce Dorman, an orthopedic surgeon in private practice. Dr. Dorman examined plaintiff carefully and gave the following as his diagnosis: "I had felt that she had an inter-spinus ligament sprain in the neck or in the cervical area" and in line with his treatment in such cases, injected at the base of plaintiff's skull a hydrocortosine derivative to relieve such symptoms as he found, suggesting additional hospitalization as a means of temporary and permanent relief.

On October 9, 1962, plaintiff returned to the Base Hospital and was again examined by Dr. Wyman, who finding some of her former symptoms still prevailing again prescribed additional sedatives for her comfort. Her recovery seemingly continued satisfactorily until on November 8, 1962, she suffered a setback, coming about from a fall in the bathroom of her home, where she, on following one of

the children into the room, slipped on an accumulation of water which had been splashed from the bathtub and in her fall struck the back of her head against the wall. Again she was taken to the Hospital Emergency Room following this fall and treated for severe pain and nausea. On returning home the same treatment was continued and evidently satisfactory progress was made.

She continued as an out-patient at Camp LeJeune until her husband was transferred to Quantico, Virginia, during July 1963, where she thereafter reported to the Base Hospital at Quantico and became a patient of Dr. George Kartalian, an orthopedic surgeon holding the rank of Major and at such time being assigned to the Quantico Naval Hospital. She remained an out-patient at such hospital until July 1964, being given regularly assigned visiting privileges, and where she likewise received traction treatment, and was administered various medicines including tranquilizers, codeine, darvon and other drugs for relief.

This situation continued and was continuing up until the time of the hearing of this cause.

The evidence discloses and plaintiff's medical history reveals that she has suffered from migraine headaches over a considerable period of time and has consistently used sedatives and tranquilizers, being classified as a highly nervous person. It would seem however, that she is now getting hold of herself and that in due time she will have fully recovered. In fact it would appear that a nervous upset is in a large measure a considerable part of her continued difficulties.

Although the alleged negligence of defendant's driver was denied in the pleadings, it obviously appeared so palpably plain from the testimony that the United States Attorney admitted that the driver was negligent and that his negligence was the proximate cause of the injury and damage suffered and sustained by plaintiff.

This case is wholly a factual one.

█ When one considers the amount of compensation to which plaintiff would

be entitled on account of defendant's negligence, it must be taken into consideration that she, due to her status as a military dependant, the wife of an enlisted man in the Marine Corps, is entitled to the benefits flowing from that status; and in this case she has received free hospitalization and treatment, together with administered medicines, all at no cost whatever, and only paying a nominal daily charge as an in-patient at the hospital. This pretty much eliminates any expense and limits her recovery to an actual amount by way of compensation for the pain and suffering which she has undergone.

Accordingly I award to her the sum of Five Thousand Dollars ($5,000.00) in full of all compensation to which she is entitled for the injuries sustained and suffering had, together with the additional sum of $103.53 in full of damage to her automobile.

Counsel will submit decree carrying this decision into effect, which should embrace an award of compensation under the statute to Joseph C. Olschner, Esquire, her counsel of record.